## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JAMES L. BROOKS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:24-cv-2188-KHV-ADM** |
| | ) | |
| **BNY MELLON TRUST OF** | ) | |
| **DELAWARE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT BNY MELLON TRUST OF DELAWARE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

James L. Brooks filed this action pro se against the BNY Mellon Trust of Delaware ("BNY") and various other private, state, and federal defendants, alleging myriad federal constitutional, statutory, and state law violations arising from his inability to cash certain checks. Plaintiff fails to state claims against BNY on which relief can be granted. For the following reasons, BNY moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

According to him, Plaintiff is a resident of Johnson County, Kansas. Compl. at 1. Plaintiff rescinded his Social Security number in 1990 and, as a result, is unable to open a bank account. *Id.* at ¶¶ 1, 3.[1] Plaintiff's mother passed away in February 2023, leaving Plaintiff $52,000 in investments to be paid out by Defendant J.W. Cole through five checks. *Id.* at ¶ 1. Plaintiff's wife

---

[1] Plaintiff's allegations are purportedly structured by claim. It is evident, however, that not every section asserts an independent claim for relief. Instead, Plaintiff's list of claims reads as segments of a factual narrative. Because Plaintiff's Complaint does not state claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b), it is difficult to determine what claims Plaintiff asserts against which defendants or to cite specific allegations for the Court. For this reason, BNY's citations to paragraphs in the Complaint correspond to the claim number in which a cited allegation appears.

passed away two months later, leaving Plaintiff $10,000 in life insurance to be paid out by check from Defendant TransAmerica Life Insurance Co. *Id.* at ¶ 2.

Plaintiff alleges that each check issued for these payments was drawn from an account the issuers held with BNY. Compl. at ¶¶ 1, 2. Because Plaintiff does not have his own bank account, he sought to cash the checks directly with the issuers. *Id.* at ¶ 2; *see also* ¶ 4. Plaintiff was either told, or concluded himself, that the issuing entities were unable to cash the checks directly. *Id.* Allegedly, at least one issuer told Plaintiff that BNY did not handle cash and thus could not cash the checks. *Id.* at 2; *see also id.* at ¶ 1 ("BNY Mellon Trust is not the typical retail bank. It is only a commercial bank serving government departments and other financial institutions. It does not handle cash.").

Plaintiff then sought to cash his checks with local check-cashing companies. *Id.* at ¶ 4. His attempts failed because either the companies would not cash checks exceeding $5,000 for fear of issues with the IRS, or processing the checks required a Social Security number, which Plaintiff refuses to provide. *Id.*

Despite knowing that BNY "does not handle cash," Compl. at ¶ 1, Plaintiff drove to BNY's building in Wilmington, Delaware, to seek assistance finding a branch that would cash the checks. *Id.* at ¶ 5. Plaintiff arrived at BNY's building near the close of business and attempted to speak with several employees in the parking lot. *Id.* Employees alerted security, and Plaintiff spoke with a security guard. *Id.* After a brief conversation, the guard asked him to leave the premises. *Id.*

Eventually, each of Plaintiff's uncashed checks were declared abandoned property. *See Id.* at ¶¶ 9, 11.

Plaintiff filed this suit against BNY, J.W. Cole Financial Co., National Financial Services, LLC, TransAmerica Life Insurance Co., LendNation, the Federal Trade Commission, the Internal

Revenue Service, and the State of Kansas. Compl. at 7. He alleges violations of his 1st and 4th Amendment rights, Article I and Article IV of the U.S. Constitution, the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, Section 43(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Kansas Uniform Commercial Code. Compl. at 6. He further alleges two conspiracies: one to engage in "reverse money laundering" and impair the obligation of contracts thereunder, and another to deprive Plaintiff of access to judicial process. *See id.*; *see also id.* at ¶ 17. Plaintiff seeks one billion dollars in punitive damages against all named defendants. *Id.* at 4.

## MOTION STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Claims or defenses must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* 10(b).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to facially state a claim that is plausible, not merely conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The acceptable scope of factual matter is determined by first ignoring all legal conclusions, labels, and formulaic recitations of the elements. *Id.* at 678–80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). Those facts must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although pro se pleadings are construed liberally, a pro se party must still "follow the same rules of procedure that govern other litigants." *United States v. Green*, 886 F.3d 1300, 1307 (10th Cir. 2018) (citation omitted). Even liberally construed, a pro se pleading must rise or fall on the

legal theories and facts the pro se plaintiff pled. *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

# ARGUMENT

## I.    Plaintiff's Complaint Fails to State a Claim against BNY on Which Relief Can be Granted.

Plaintiff fails to state a plausible claim against BNY. After setting aside improper conclusory allegations, the facts do not permit a reasonable inference that BNY is liable for any alleged misconduct. Plaintiff's federal claims categorically do not apply to BNY, and Plaintiff's remaining claims are so factually deficient that no reasonable inference of BNY's alleged misconduct can be drawn.

### A.    Plaintiff's Federal Claims Against BNY Fail.

Plaintiff alleges numerous federal constitutional and statutory claims. Each fails to state a plausible claim against BNY. Plaintiff's constitutional claims fail because BNY is not a state actor, nor has Plaintiff alleged any plausible joint action between BNY and a state actor. The statutory claims fail because BNY is not a federal employee under the Federal Tort Claim Act, and Plaintiff has no standing to bring a claim under the Lanham Act.

Each of Plaintiff's federal constitutional claims against BNY, whether arising under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), fails to state a claim on which relief may be granted. The provisions of § 1983 apply only to persons acting under color of state law. *See Janny v. Gamez*, 8 F.4th 883, 918 (10th Cir. 2021) (citation omitted). The deprivation necessary to maintain a § 1983 suit must be "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who

may fairly be said to be a state actor." *Id.* (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

Private parties (*i.e.*, non-state actors) may nonetheless be classified as state actors if they are "jointly engaged with state officials in the conduct allegedly violating the federal right." *Id.* at 919. A plaintiff may prove a willful joint action by demonstrating "that the public and private actors engaged in a conspiracy." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000)). But to establish a joint-actor conspiracy, a plaintiff must (1) "demonstrate the public and private actors reached agreement upon 'a common, unconstitutional goal'"; and (2) "took 'concerted action' to advance that goal." *Id.*

Any claim under § 1983 would fail here because Plaintiff never alleges an action by a state actor, let alone a conspiracy between a state actor and BNY. Plaintiff claims that he has been deprived of his First and Fourth Amendment rights arising from an infringement of his free speech and his alleged lack of access to Kansas state courts. *See* Compl. at ¶¶ 15, 17. Yet despite bringing suit against the State of Kansas, nowhere in Plaintiff's Complaint does he allege any action taken by the State. Even if he did, he does not further allege that BNY has "jointly engaged with state officials." *See Lugar*, 457 U.S. at 941 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Nor does Plaintiff allege any facts that, if true, would demonstrate an agreement between BNY and a state actor concerning "a common, unconstitutional goal" or any "'concerted action' to advance that goal." *Janny*, 8 F.4th at 919. Plaintiff fails to allege that BNY engaged in a state action, thus each of his constitutional claims against BNY fail to state an actionable claim and should be dismissed.

So too any action under *Bivens*. *Bivens* provides an implied right of action for damages against federal officers alleged to have violated a plaintiff's constitutional rights. *Corr. Servs. Corp.*

*v. Malesko*, 534 U.S. 61, 66 (2001). BNY is a private actor; it is not a federal officer and does not act under color of federal law. And Plaintiff's only allegation that suggests a joint action between BNY and federal actors is the allegation that the IRS launched a "[p]olitical weaponization of the banking industry . . . to exclude non-socialists" and that financial organizations, presumably including BNY, "passively accepted it." Compl. at ¶ 14. Plaintiff's own phrasing, however, demonstrates that there is no joint action here—BNY is alleged to have "passively" accepted an alleged IRS policy; Plaintiff's Complaint is totally devoid of any allegedly joint action.

Assuming Plaintiff could allege some conspiracy imputing federal action to BNY, the law would still not support a *Bivens* action. *See Malesko*, 534 U.S. at 71. The Supreme Court has long hesitated to extend the implied right of action in *Bivens*, *including* against private entities that operate under color of federal law. *Id.* Even if BNY was operating under color of federal law (it is not) Plaintiff could not prevail against BNY on a *Bivens* claim. *See id.*

Turning to Plaintiff's federal statutory claims, Plaintiff cannot state a plausible claim against BNY under either the Federal Tort Claim Act ("FTCA") or the Lanham Act. The FTCA authorizes tort claims for injuries or damages caused by the negligence of federal government employees acting within the scope of their official duties. 28 U.S.C. § 2675. Plaintiff does not allege that BNY is a federal employee (nor could he plausibly), therefore he fails to state an actionable claim. Plaintiff further has no standing to bring a claim under the Lanham Act. The Lanham Act prohibits false advertising in commerce. 15 U.S.C. § 1125(a)(1). Plaintiff does not have standing to bring this claim as a consumer. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 ("[T]o come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in

reputation or sales."). Moreover, he alleges no facts that support that BNY ever made an allegedly false advertisement. He thus fails to state a claim and his Lanham Act claim should be dismissed.[2]

**B.    Plaintiff's Remaining Claims Fail to Satisfy Rule 12(b)(6).**

Plaintiff peppers references to numerous other claims throughout his Complaint. Each fails to cross the plausibility threshold to survive a 12(b)(6) motion to dismiss.

1.    *Conspiracy Claims*

Plaintiff asserts numerous conspiracies, and all should be dismissed. "The elements of a civil conspiracy include (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Citizens State Bank, Moundridge v. Gilmore*, 226 Kan. 662, Syl. ¶ 7, 603 P.2d 605, 607 (1979). Plaintiff fails to adequately allege any conspiracy.

Construing Plaintiff's allegations liberally, he appears to allege that BNY conspired with other private defendants to not cash his checks. Plaintiff does not allege, however, that refusal to cash a check is an "unlawful overt act" or that the defendants held a common object in refusing to cash his checks. Indeed, he does not even allege that BNY refused to cash his checks—he arrived at the branch location near closing and appears to have never even entered the building. *See* Compl. at ¶ 5.

No matter the context or articulation of his conspiracy claims, Plaintiff fundamentally fails to allege that there was any common object or meeting of the minds between BNY and any other defendant, so his conspiracy claims should be dismissed for failure to state a claim.

---

[2]    Plaintiff's remaining so-called federal issue—"reverse money laundering through fraud and deception and impairment of the obligation of contracts with conspiracy to do so"—is supported by nothing but legal conclusions and thus does not state a claim for relief. *See* Compl. at ¶ 7 (accusing defendants of "incidentally joining into a conspiracy . . . to reverse money launder"); *see also id.* at ¶ 12 ("Interference with the obligation of contracts by a 3rd party. . . . Is that you, BNY? . . . The judge will sort it all out.").

2.    *Fraud*

Plaintiff's apparent attempt to state a claim for fraud against BNY is based purely on conclusory allegations and should be dismissed. "Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage." *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194, 1198 (1991). A plaintiff is required to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9.

Plaintiff fails to plead facts in support of a fraud claim with the requisite particularity. Plaintiff alleges that he sent copies of his checks, each bearing BNY's information as the account holder, to the Federal Trade Commission. Compl. at ¶ 6. The copies were sent to the Financial Investigations and Border Crimes Task Force, which informed Plaintiff that "fraud had occurred." *Id.* Based on this allegation alone, Plaintiff concludes that BNY engaged in interstate bank fraud. *Id.*

Not only does Plaintiff not plead facts that could lead the Court to reasonably infer that BNY actually committed fraud, *Iqbal*, 556 U.S. at 678, Plaintiff fails to plead his fraud claim with the particularity required, *see* Fed. R. Civ. P. 9. As a result, any claim for fraud should be dismissed.

3.    *Kansas Uniform Commercial Code*

Plaintiff further fails to adequately allege a claim under the Kansas Uniform Commercial Code. His only allegation under the Kansas UCC is that BNY did not "perform with good intentions." Compl. at ¶ 8. But Plaintiff alleges no contract. He alleges no obligation to perform. And he alleges no transaction in goods. *See* K.S.A. § 84-2-102 ("[T]his article applies to

8

transactions in goods . . . ."). He merely alleges that BNY violated "[a]n axiom." *Id.* That is not enough to state a claim under the Kansas UCC.

Plaintiff's claims do not fall within the scope of the Kansas UCC, and therefore this claim should be dismissed.

4.     *Claim for "Persistent Mental Anguish"*

In passing, Plaintiff alleges a claim for "persistent mental anguish," which could be liberally construed in the context of the Complaint as a claim for intentional infliction of emotional distress. Even construed as such, Plaintiff fails to state a claim.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981) (citation omitted). Four elements must be met: "(1) [t]he conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe." *Id.*

Whatever distress Plaintiff's trip to Wilmington to visit BNY's location brought him, Plaintiff fails to allege extreme or outrageous conduct on part of BNY, extreme and severe mental distress on his own part, or a causal connection between the two. None of BNY's guard's conduct plausibly rises to the level of extreme and outrageous. Conduct is only actionable if it is "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society." *See id.* at 293. Plaintiff arrived at BNY's building near closing and began speaking with employees in the parking lot. Compl. at ¶ 5. At the request of employees, the guard approached Plaintiff and had what appears from

Plaintiff's allegations to be a cordial conversation. *Id.* The guard listened to Plaintiff's "dilemma" and commented that Plaintiff's refusal to use his Social Security number contributed to his inability to cash his checks. *Id.* The guard then allegedly asked Plaintiff to leave the parking lot or he would call the police. *Id.* None of this plausibly amounts to extreme or outrageous behavior that is "regarded as atrocious and utterly intolerable in civilized society." *Roberts*, 230 Kan. at 293.

Nor do Plaintiff's allegations of "persistent mental anguish" plausibly rise to the level of severe emotional distress. Plaintiff alleges multiple repairs that he had to make to his vehicle due to his trip. Compl. at ¶ 5. He further alleges distress from driving 17 hours through the night on a "one-way driving fright-mare." *Id.* These allegations do not rise to the level of severe emotional distress. *Valadez v. Emmis Commc'n's*, 290 Kan. 472, 478, 229 P.3d 389, 395 (2010) ("Elevated fright, continuing concern, embarrassment, worry, and nervousness do not by themselves constitute sufficient harm to a plaintiff to warrant the award of damages for [intentional infliction of emotional distress].").

Moreover, there is no causal connection between Plaintiff's alleged distress and any conduct attributable to BNY. Plaintiff was not required to travel from Kansas to Delaware to speak with a representative about branch services. For each of these reasons, Plaintiff's claim for "persistent mental anguish" should be dismissed.

5.    *Interference with Obligation of Contracts by a Third Party*

The final claim Plaintiff appears to assert against BNY is one for interference with the obligation of contracts by a third party. Compl. at ¶ 12. Article I Section 10 of the U.S. Constitution, which prohibits Congress from passing laws "impairing the Obligation of Contracts," clearly has no application here, as BNY is not Congress and has no ability to pass laws. *Contra id.*

Liberally construed, this claim could be one for tortious interference with a contract. Under Kansas law, "[t]he elements essential to recovery for a tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130, 150 (2003).

But Plaintiff's allegations are wholly inadequate to state a claim for tortious interference with a contract: Plaintiff identifies no contract; he does not allege that BNY knew of any contract; and he alleges no fact that would support a reasonable inference of an intentional procurement of breach of the unidentified contract. Even generously construing Plaintiff's claims and allegations, he fails to state a plausible claim for tortious interference with a contract.

## CONCLUSION

Plaintiff has failed to state any plausible claim against BNY on which relief can be granted. For the foregoing reasons, BNY respectfully requests the Court grant its motion to dismiss. In the alternative, BNY requests the Court require Plaintiff to restate his Complaint in appropriately limited numbered paragraphs, according to Federal Rule of Civil Procedure 10, so BNY can adequately prepare a responsive pleading.

Respectfully submitted,
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: *s/ Logan M. Rutherford*
Logan M. Rutherford, KS #25830
Michael S. Montoya, KS #29379
1200 Main Street, Suite 3800
Kansas City, MO 64105
(816) 374-3200 telephone
(816) 374-3300 facsimile
logan.rutherford@bclplaw.com
michael.montoya@bclplaw.com

ATTORNEYS FOR DEFENDANT
BNY MELLON TRUST OF DELAWARE

## CERTIFICATE OF SERVICE

      I certify that on June 20, 2024, a true and correct copy of the foregoing document was electronically filed with the Court's CM/ECF electronic filing system, which sent notice to all counsel of record.

s/ *Logan M. Rutherford*
Attorney for Defendant BNY Mellon
Trust of Delaware