## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JAMES L. BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 24-2188-KHV** |
| | ) | |
| **BANK OF NEW YORK MELLON TRUST** | ) | |
| **COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On May 2, 2024, James L. Brooks filed suit pro se against the United States Internal Revenue Service ("IRS"), the Federal Trade Commission ("FTC"), the State of Kansas, BNY Mellon Trust of Delaware ("BNY"), QC Financial Services, Inc. d/b/a LendNation, J.W. Cole Financial Services ("J.W. Cole"), National Financial Services, LLC ("NFS") and Transamerica Life Insurance Company ("Transamerica") (collectively, "defendants"), alleging a variety of claims concerning his inability to cash or deposit checks from the proceeds of his late mother's estate and his late wife's insurance policy.

This matter is before the Court on the following motions: Defendant QC Financial Services, Inc.'s Motion To Dismiss (Doc. #25) filed June 11, 2024; Defendant's [State of Kansas] Motion To Dismiss (Doc. #30) filed June 17, 2024; Defendant BNY Mellon Trust Of Delaware's Motion To Dismiss (Doc. #31) filed June 20, 2024; Defendant J.W. Cole Financial Services' Motion To Dismiss (Doc. #40) filed June 26, 2024; Defendant National Financial Services, LLC's Motion To Dismiss Or In The Alternative Compel Arbitration (Doc. #42) filed June 28, 2024; Defendant TransAmerica Life Insurance Company's Motion To Dismiss (Doc. #44) filed July 2, 2024; Federal Defendants' Motion To Dismiss Plaintiff's Claims Against The IRS And FTC

(Doc #47) filed July 3, 2024; and Defendant J.W. Cole Financial Services' Motion To Strike Surreply (Doc. #62) filed July 18, 2024.[1]  For reasons set forth briefly below and for substantially the reasons set forth in defendants' motions to dismiss, the Court sustains defendants' motions to dismiss.[2]

---

[1]        J.W. Cole asks the Court to strike plaintiff's Surreply To Defendant's En Banc Demand For Evidence (Doc. #61) which plaintiff filed on July 18, 2024 without leave of court. Under District of Kansas Local Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response and a reply.  Surreplies typically are not allowed.  Taylor v. Sebelius, 350 F. Supp. 2d 888, 900 (D. Kan. 2004).  The Court permits them in rare cases, and only after a party has first sought leave.  Id.  J.W. Cole's reply does not raise new issues or evidence which would permit the filing of a surreply.  See Defendant J.W. Cole Financial Services' Reply Memorandum In Support Of Motion To Dismiss (Doc. #58) filed July 15, 2024.  The Court therefore sustains J.W. Cole's motion to strike plaintiff's surreply.

        Without seeking leave of court, plaintiff filed four additional surreplies to pending motions to dismiss.  See Response To QC Financial Services, Inc's Reply In Support Of Its Motion To Dismiss (Doc. #51) filed July 9, 2024; Response To [LendNation's] Motion To Dismiss (Doc. #53) filed July 9, 2024; Response To Defendant BNY Mellon Trust Of Delaware's Motion To Dismiss (Doc. #54) filed July 9, 2024; Plaintiff's Response To Defendant State Of Kansas' Reply In Support Of Their Motion To Dismiss (Doc. #59) filed July 15, 2024.  For the same reasons the Court sustains J.W. Cole's motion to strike plaintiff's surreply, the Court does not consider these surreplies.  Even if the Court were to consider the arguments in plaintiff's surreplies, it would reach the same result on defendants' motions to dismiss.

[2]        On June 20, 2024, plaintiff filed his Voluntary More Particular Statement From Plaintiff Directed To Defendant J.W. Cole In Particular And All Others Merely As A Help (Doc. #33).  The document lists 31 statements and directs J.W. Cole to either admit or deny each statement.

        Despite applying less stringent standards to pro se pleadings, pro se filings must still follow the Federal Rules of Civil Procedure.  Williamson v. Owners Resort & Exch., 90 Fed. App'x. 342, 345 (10th Cir. 2004).  Plaintiff's filing does not follow Rule 7, Fed. R. Civ. P (listing allowed pleadings) or Rule 8 (pleading must contain "short and plain statement" of court's jurisdiction, claim showing that pleader is entitled to relief and demand for relief sought).  Because the Voluntary More Particular Statement (Doc. #33) is largely redundant of statements contained in the Complaint (Doc. #1) and the Court sustains defendants' motions to dismiss on the merits notwithstanding the more definite statement, the Court does not consider the Voluntary More Particular Statement (Doc. #33) in its evaluation of the motions to dismiss.

**Factual Background**

Plaintiff's complaint contains mostly conclusory and often unintelligible claims.  The Court has attempted to distill the relevant facts, as follows, and otherwise incorporates the complaint by reference.  Plaintiff's complaint alleges as follows:

In 1990, based on his political beliefs, plaintiff chose to stop using his Social Security number.  Plaintiff mailed a letter to the Social Security Administration and the IRS in which he asked to rescind his Social Security account and number.  Because plaintiff does not use his Social Security number, financial institutions have not allowed him to open bank accounts, deposit checks or cash checks issued to him.

In 2023, after his mother and wife each passed away, defendants issued several checks to plaintiff.  In February of 2023, plaintiff's mother died and left a portion of her inheritance to her five children, including $52,000 to plaintiff.  Plaintiff's mother kept her investments and plaintiff's inheritance proceeds with J.W. Cole and NFS.  J.W. Cole, through NFS, issued five checks through BNY to plaintiff for his mother's inheritance proceeds.  On April 23, 2023, plaintiff's wife died.  Before she died, plaintiff's wife named plaintiff as the sole beneficiary of a $10,000 life insurance policy with Transamerica.  Transamerica issued plaintiff a check for the life insurance proceeds.

Despite his many efforts, plaintiff cannot cash the checks issued to him.  Transamerica and BNY each told plaintiff that they do not hold cash from which he could cash his checks.  After driving from Kansas City to a BNY location in Wilmington, Delaware on November 15, 2023 to try to cash his checks, a security guard for BNY told him he could not cash his checks there and plaintiff experienced persistent mental anguish.  Plaintiff sent a complaint to the FTC and alleged that J.W. Cole, BNY, NFS and Transamerica issued him suspect checks.  In response, the FTC told plaintiff that it was not the appropriate agency to process his complaint.  Plaintiff also tried to

cash the checks at a nearby LendNation location because LendNation had an advertisement that read "[w]e cash all checks." Complaint (Doc. #1) at 11. Despite the advertisement, plaintiff could not cash his checks with LendNation because he does not use a Social Security number.

At some unspecified date, J.W. Cole or NFS notified the State of Kansas that the checks they issued to plaintiff were now considered abandoned property because plaintiff had not yet cashed them. In addition, Transamerica informed plaintiff that it would also declare its check abandoned if plaintiff did not cash it soon.

In conclusory fashion, plaintiff also alleges that the Johnson County and Wyandotte County District Courts have "blacklisted" and denied him access to legal representation. Id. at 8.

On May 2, 2024, plaintiff filed suit against the IRS, the FTC, the State of Kansas, BNY, LendNation, J.W. Cole, NFS and Transamerica. Plaintiff asserts 18 counts, alleging violations of state and federal law, and seeks one billion dollars in punitive damages.

## Analysis

Defendants filed seven motions to dismiss plaintiff's complaint. The FTC, the IRS, the State of Kansas and NFS argue that the Court lacks subject matter jurisdiction over plaintiff's suit. The FTC, the IRS and the State of Kansas also assert that they are immune from suit under principles of sovereign immunity. All defendants contend that the Court should dismiss plaintiff's claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P.

### I.  Subject Matter Jurisdiction

#### A.   Federal Question Jurisdiction

Plaintiff invokes federal question jurisdiction pursuant to 28 U.S.C. § 1331. Defendants

argue that he has not sufficiently alleged federal question jurisdiction.[3]

Federal courts are courts of limited jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  Therefore, the law imposes a presumption against jurisdiction.  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  The Court may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction, Scheideman v. Shawnee Cnty. Bd. Of Cnty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).  Plaintiff bears the burden of showing that jurisdiction is proper.  See Scheideman, 895 F. Supp. at 280; see also Soto v. Kalatzes, No. 21-4103, 2022 WL 1831258, at *2 (10th Cir. June 3, 2022) (even pro se plaintiffs bear burden of demonstrating proper basis for subject matter jurisdiction).

For a case to arise under federal law, the federal question must be apparent on the face of the well-pleaded complaint.  Rice v. Office of Servicemembers' Grp. Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001).  Plaintiff's cause of action must be created by federal law or, if it is a state-

---

[3]  NFS argues that the Court also lacks diversity jurisdiction over plaintiff's suit.  In plaintiff's Complaint (Doc. #1) at 3, he asserted federal question as the basis for jurisdiction.  The Court thus focuses its analysis on federal question jurisdiction.

Even if plaintiff alleges subject matter jurisdiction under 28 U.S.C. § 1332, which requires complete diversity in citizenship between the parties and an amount in controversy exceeding $75,000, he fails to properly allege complete diversity of citizenship between the parties.  Complete diversity means that "no plaintiff and no defendant are citizens of the same state."  Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014).  When suing multiple defendants in a diversity action, plaintiff bears the burden of proving that diversity jurisdiction exists for each defendant.  United States ex. rel. General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995).  While the complaint contains a list of addresses for each defendant, it does not allege defendants' citizenship, states of incorporation or principal places of business.  Plaintiff has therefore failed to carry his burden of establishing diversity for each of the named defendants.  See Tucker v. Elk City Police Dep't, No. 22-6023, 2022 WL 2165508, at *2 (10th Cir. June 16, 2022) (dismissing pro se lawsuit for lack of subject matter jurisdiction when plaintiff failed to allege citizenship of defendants).

law cause of action, its resolution must necessarily turn on a substantial question of federal law, and that federal law must create a private cause of action.  Id.

Here, the complaint alleges no viable basis for federal question jurisdiction.  Liberally construed, the complaint invokes federal question jurisdiction based on four statutes: 42 U.S.C. § 1983, the Lanham Act, 15 U.S.C. § 1125(a), and 18 U.S.C. §§ 1341 and 1343.[4]  Plaintiff's "Jurisdictional Statement" lists a number of federal statutes, constitutional provisions and state law tort and contract claims under which he presumably brings suit.  The majority of plaintiff's actual claims, however, do not specifically reference or incorporate any of those listed statutes or provisions.  The Court therefore limits its examination of plaintiff's purported bases for federal question jurisdiction to those mentioned in the context of plaintiff's factual allegations.

---

[4]     The complaint also refers to "constitutional torts" and the "Jurisdictional Statement" refers to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80.  Even if the Court interpreted the complaint as alleging an action under the FTCA, the FTCA cannot form the basis of federal question jurisdiction in this case.  First, the FTCA does not provide a cause of action against non-government defendants.  See In re Franklin Sav. Corp., 385 F.3d 1279, 1286 (10th Cir. 2004).  Second, plaintiff cannot pursue an FTCA claim against the United States unless he has first presented his claim to the appropriate federal agency and the agency has denied that claim.  See 28 U.S.C. § 2401(b); McNeil v. United States, 508 U.S. 106, 111 (1993).  This exhaustion requirement is jurisdictional, and absent any showing by plaintiff that he has exhausted his administrative remedies, the Court lacks jurisdiction.  Est. of Cummings v. United States, 651 F. App'x 822, 828 (10th Cir. 2016), as clarified on reh'g (June 24, 2016).  Third, the FTCA does not expose the United States to liability for the commission of all torts or "constitutional tort" claims, as plaintiff has alleged.  See, e.g., Richards v. United States, 369 U.S. 1, 6 (1962); see also FDIC v. Meyer, 510 U.S. 471, 478 (1994) (federal government "has not rendered itself liable under [the FTCA] for constitutional tort claims").

    Plaintiff also alleges state law tort and contract causes of action.  While the Court recognizes that a state law cause of action may still "arise under" the laws of the United States if the well-pleaded complaint establishes that plaintiff's right to relief under state law requires resolution of a substantial, disputed question of federal law, the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction.  See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983).  A cursory review of plaintiff's complaint reveals no need to resolve substantial, disputed questions of federal law to address any claim alleged under his state law tort and contract theories of recovery.

1.    Whether Section 1983 Provides A Basis For Federal Question Jurisdiction

In claims 15, 16 and 17, plaintiff seemingly alleges that defendants deprived him of constitutional rights.  Section 1983 provides a cause of action for plaintiffs whose federal rights are violated by an individual acting under color of state law.  42 U.S.C. § 1983.  To invoke federal question jurisdiction under Section 1983, plaintiff must first show a violation of the Constitution or of federal law, and then show that someone acting "under color of state law" committed the violation.  Id.; McCarty v. Gilchrist, 646 F.3d 1281, 1285 (10th Cir. 2011) (Section 1983 provides federal civil remedy for deprivation of rights, privileges, or immunities secured by Constitution by person acting under color of state law).

In claims 15 and 16, plaintiff alleges that all defendants deprived him of First Amendment rights by influencing him to abandon capitalism and embrace socialism.  Plaintiff does not allege, however, that any defendant took any specific action to deprive him of First Amendment rights.  Further, as to the private defendants—LendNation, BNY, Transamerica, NFS and J.W. Cole— plaintiff does not allege that they acted under color of state law or otherwise engaged in state action.  See Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 968 (10th Cir. 1996) (First Amendment only protects regulation by government); see also How v. City of Baxter Springs, Kan., 217 Fed. App'x. 787, 791 n.3 (10th Cir. 2007) (to hold private individual personally liable under First Amendment, court "must determine whether [private party's] actions may be fairly attributed to the State.") (citations omitted).  Plaintiff therefore has failed to establish federal question jurisdiction under Section 1983 for claims 15 and 16.

Claim 17 loosely alleges that the Johnson County and Wyandotte County District Courts acted to block his access to state courts.  The theory underlying plaintiff's claim is difficult to discern.  Interpreting this claim as one against the State of Kansas for its alleged deprivation of

plaintiff's constitutional rights to equal protection, plaintiff's claim is plainly barred by Eleventh Amendment immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens" and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted).  Federal courts cannot exercise either diversity or federal question jurisdiction over a state when Eleventh Amendment sovereign immunity is asserted. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  Arguments of sovereign immunity and subject matter jurisdiction are inextricably intertwined and sovereign immunity is therefore a matter of subject matter jurisdiction.  Hartman v. Golden Eagle Casino, Inc., 243 F. Supp. 2d 1200, 1202 (D. Kan. 2003) (citing E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302 (10th Cir. 2001)).

The Eleventh Amendment presents a jurisdictional bar to suits against a state unless the state waives its immunity. Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted Section 1983. Quern v. Jordan, 440 U.S. 332, 338–45 (1979).  Because the Eleventh Amendment bars plaintiff's Section 1983 claims against the State of Kansas, the Court sustains the State of Kansas's motion to dismiss on this ground.

Accordingly, Section 1983 does not provide a basis for federal question jurisdiction for

plaintiff's suit to proceed.

      2.      Whether The Lanham Act Provides A Basis For Federal Question Jurisdiction

Claim 4 appears to assert against LendNation a false advertising claim under Section 43(a)(1)(B) of the Lanham Act.  See 15 U.S.C. § 1125(a).[5]  Plaintiff alleges that he could not cash his checks at a LendNation location despite the company's advertisement that it cashes all checks.

To bring a false advertising claim under Section 43(a)(1)(B), plaintiff must "allege an injury to a commercial interest in reputation or sales."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131 (2014).  A consumer like plaintiff lacks the necessary commercial injury for standing.  See id.  ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act[.]").  Plaintiff has therefore not alleged an injury sufficient to invoke federal question jurisdiction under the Lanham Act against LendNation or any other defendant.  Accordingly, the Lanham Act does not provide a basis for federal question jurisdiction.

      3.      Whether 42 U.S.C. §§ 1341 And 1343 Provide A Basis For Federal

---

[5]      Section 43(a)(1)(B) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
. . .
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Question Jurisdiction

In claims 6, 7, 9 and 10, plaintiff alleges that defendants committed interstate mail and wire fraud. Federal courts have consistently concluded that these statutes do not create a private right of action for purposes of federal question jurisdiction. See Saul v. U.S. Bank Nat'l Ass'n, No. CIV 24-0442 JB/SCY, 2024 WL 2804055, at *9 (D.N.M. May 31, 2024) (collecting cases holding that 42 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) do not create private right of action). For these reasons, 42 U.S.C. §§ 1341 and 1343 do not provide a basis for federal question jurisdiction over plaintiff's claims.

Accordingly, plaintiff's allegations do not set out any discernable basis for federal question jurisdiction. See Castaneda, 23 F.3d at 1580 (court may only exercise jurisdiction when specifically authorized to do so). The complaint fails to plead facts sufficient to establish subject matter jurisdiction and the Court therefore sustains defendants' motions to dismiss. Because the Court lacks subject matter jurisdiction, it does not reach the merits of defendants' defenses or arguments for dismissal under Rule 12(b)(6), Fed. R. Civ. P.

**IT IS THEREFORE ORDERED** that Defendant QC Financial Services, Inc.'s Motion To Dismiss (Doc. #25) filed June 11, 2024; Defendant's [State of Kansas's] Motion To Dismiss (Doc. #30) filed June 17, 2024; Defendant BNY Mellon Trust Of Delaware's Motion To Dismiss (Doc. #31) filed June 20, 2024; Defendant J.W. Cole Financial Services' Motion To Dismiss (Doc. #40) filed June 26, 2024; Defendant National Financial Services, LLC's Motion To Dismiss Or In The Alternative Compel Arbitration (Doc. #42) filed June 28, 2024; Defendant TransAmerica Life Insurance Company's Motion To Dismiss (Doc. #44) filed July 2, 2024; Federal Defendants' Motion To Dismiss Plaintiff's Claims Against The IRS And FTC (Doc #47) filed July 3, 2024 are **SUSTAINED**.

**IT IS FURTHER ORDERED** that <u>Defendant J.W. Cole Financial Services' Motion To Strike Surreply</u> (Doc. #62) filed July 18, 2024 is **SUSTAINED**.

Dated this 14th day of August, 2024 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge